IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEVON WILLIAMS | * | |
|     Plaintiff, | | |
|        v. | * | CIVIL ACTION NO. PJM-06-1830 |
| BRIAN BOZMAN[1] | * | |
| W. WEST | | |
| KATHLEEN GREEN | * | |
|     Defendants. | | |
| | *** | |

**<u>MEMORANDUM OPINION</u>**

When alleging a constitutional failure-to-protect claim under the Eighth Amendment, a prisoner must present evidence that a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, for a prison official to be truly "subjectively reckless," he or she must have knowledge both of the risk of harm and also that conduct is inappropriate in light of that risk. *See Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).

Plaintiff filed this failure-to-protect Complaint pursuant to 42 U.S.C. § 1983. He alleges that on May 22, 2006, he was informed by Eastern Correctional Institution ("ECI") Case Management Specialist Bozman that a letter had been intercepted from off the West Compound of ECI from the Bloods Gang ("Bloods") stating that Plaintiff was a snitch and was to be killed on sight. According to Plaintiff, Bozman indicated that he would get Plaintiff out of ECI.[2]  Plaintiff further states that he tried to move, but no one "payed [sic] me any attention." He complains that almost two months

---

1  The docket shall be modified to reflect the correct spelling of Defendant Bozman's name.

2  Plaintiff indicates that he received a notice from team management on April 21, 2006, that he was to be transferred to any medium security prison which did not contain his known enemies. Paper No. 7. He states that this means they knew about him being on the hit list, but did not contact him until one month later. *Id*.

later on July 14, 2006, while restraints were being placed on his hands to be escorted from the A-Tier recreation room at the Eastern Correctional Institution, he was attacked by two members of the Bloods gang. He additionally states that on August 30, 2006, he was trying to protect himself from a member of the Bloods and was cited with an infraction for fighting

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which Plaintiff has opposed. The case may be determined on the pleadings. Oral hearing is unnecessary. *See* Local Rule 105.6. (D. Md. 2004). For reasons to follow, Defendants' dispositive pleading, construed as a Motion for Summary Judgment, shall be denied.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997) (*citing Anderson,* 477 U.S. at 255). If the non-movant fails to make a sufficient showing on an element on which he has the ultimate burden of proof, summary judgment is appropriate because there is no genuine issue of material fact due to the complete failure of proof on an essential element of the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Further, the non-moving party may not rest upon matters pleaded in his complaint, but must, by factual affidavit or the like, respond to the motion to show that there is a genuine issue for trial. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(e).

Defendant Bozman, who is assigned to the ECI Segregation Unit, affirms that while Plaintiff was on disciplinary segregation he received information that Plaintiff may have a "hit" on him by the Bloods[3] because he was thinking about switching gangs and becoming a member of Dead Man, Inc.[4] Bozman informed Plaintiff of this and placed him on a transfer list to another institution. According to Bozman, in April of 2006, Plaintiff was removed from disciplinary segregation and placed on administrative segregation pending transfer. Defendants claim that after he was moved to Housing Unit 5 from the Housing Unit 4 Segregation Unit, Plaintiff received an adjustment for possession of a weapon on May 8, 2006.[5] He was then moved back to Housing Unit 4 and placed on disciplinary segregation. When Plaintiff completed his disciplinary segregation term on October 19, 2006, he was assigned to administrative segregation status and was transferred to the Western Correctional Institution ("WCI") on October 26, 2006.

According to Defendants' materials, on July 14, 2006, officers were handcuffing inmates in the 4-A Tier Lower Rec Hall at the conclusion of Segregation Unit recreation and showers when inmates Keshaun Wright and Michael Wax attacked Plaintiff, who was still cuffed. The inmates were given a direct order to stop fighting by Correctional Officer McGee and did so. Inmates Wright and Wax were cited with infractions. By Declaration, Captain West, Unit Manager for the ECI Segregation Unit, claims that he was on leave on July 14, 2006, when Plaintiff was assaulted, but indicates that Plaintiff was thereafter moved to another tier, away from Wright and Wax. West affirms that neither Wright nor Wax were on Plaintiff's OBSCIS enemies' list. West further asserts

---

3  The "Bloods" drug gang originated in the Los Angeles area of California in the early 1970's and has long since expanded to the East Coast of the United States.

4  Plaintiff refutes this statement and indicates that he only wanted out of the Bloods and is attempting to avoid all gang activity.

5  Plaintiff was apparently found guilty of that infraction and received a disciplinary segregation sentence of 150 days.

that Plaintiff was involved in an altercation with inmate Roderick King on August 30, 2006, and King was also not listed on Plaintiff's enemies' list.

In his opposition, Plaintiff requests that a dispositive decision on his case be stayed until such time as discovery is completed. He discusses the "system-wide plague" of gang-related activity at all Maryland prisons and contends that prison staff are ill-trained and ill-equipped to deal with the problems. He asks that he be allowed to obtain a "statistical analysis" of gang-related violence which has taken place at ECI and state-wide in the Division of Correction over the past five years. Plaintiff maintains that although he was placed on a "secure" unit at ECI from April, 2006, to August 30, 2006, he was attacked three times and was twice attacked (in July and August of 2006) after the ECI administration told him that he was the target of a Bloods hit. Plaintiff states that he was forced to carry a knife to protect himself, resulting in a 150-day segregation sanction imposed in May of 2006.

Defendants' Motion for Summary Judgment shall be denied. Defendant Bozman is the Case Management Specialist for the ECI Segregation Unit. He readily admits receiving information regarding a possible "hit" on Plaintiff from the Bloods. No materials are provided indicating when or in what form this information was received. Bozman maintains that: (1) at that time he received the information Plaintiff was on disciplinary segregation status; (2) he placed Plaintiff on a transfer list to be moved to another Division of Correction institution; and (3) in April of 2006, Plaintiff was removed from disciplinary segregation and placed on administrative segregation pending transfer.[6] No classification records are provided in support of these affirmations. Indeed, absolutely no classification materials from Plaintiff's base file are furnished to the Court. Further, while Bozman further states that Plaintiff was placed back on ECI disciplinary segregation due to an infraction in

---

6   Plaintiff's Offender Traffic History, however, indicates that he was assigned to ECI Administrative Segregation, Housing Unit #5, on March 30, 2006.

4

May, 2006, no explanation is given as to why Plaintiff was not transferred to another facility in the preceding month or why he could not be transferred out of ECI to another facility after receiving the infraction and the 150 day segregation sentence.[7]

Plaintiff was confined at ECI throughout 2006, until October 2006. In his opposition he maintains that even after the information regarding a potential Bloods "hit" on his life was received, he was subject to at least two assaults related to Bloods activity while confined at ECI during the time period from July to August of 2006. There is no dispute that Plaintiff was assaulted by ECI inmates Keshaun Wright and Michael Wax on July 14, 2006, after he had finished his recreation and shower time in the ECI Segregation Unit and that he was handcuffed at the time.[8] On August 30, 2006, Plaintiff was also involved in a fight with ECI inmate Roderick King in the Recreation Hall of the disciplinary segregation unit. It is not clear whether Plaintiff had been placed on recreation-alone status or whether there were any restrictions on his out-of-cell movement at the time these incidents occurred. Defendants only state that Wright, Wax, and King were not on Plaintiff's enemies' list. They do not, however, provide Plaintiff's OBSCIS enemy list documentation.

The Court finds that due to the absence of relevant materials, there remain genuine issues of material fact concerning the constitutional adequacy of classification and housing decisions and

---

[7]   According to Defendants' own records, classification personnel were able to transfer Plaintiff out of ECI to WCI within 7 days after his October 19, 2006 assignment to administrative segregation.

[8]   According to a serious incident report Wright was observed throwing closed fist punches at Plaintiff's head and back while Plaintiff was on the ground. Wax was seen stomping and kicking Plaintiff at the same time. A 5" long plastic weapon comprised of a metal tip (nail clipper) with a cloth handle was found on the floor. This weapon was allegedly used by Wright. A 4" long piece of wood, sharpened to a point and wrapped on the end with a white cloth, was found in Wax's shower bag. All three inmates were taken to the medical department for evaluation and treatment. The record presented to this Court indicates that Plaintiff suffered a broken front tooth, a laceration to his upper lip, a small laceration to his left knee, a small laceration of ¼ inch below his scapula, and another laceration to his mid-back, ½ inch in length and 3 millimeter in depth.

Case 8:06-cv-01830-PJM   Document 19   Filed 02/20/07   Page 6 of 6


security measures taken after ECI personnel were placed on notice of a potential "hit" on Plaintiff's life. Defendants' Motion for Summary Judgment shall be denied. A separate Order shall follow reflecting the decision of this Memorandum Opinion.[9]

Date:  2/20/07                                                    /s/
                                                        PETER J. MESSITTE
                                                        UNITED STATES DISTRICT JUDGE

---

9   Plaintiff, who has been granted leave to proceed in forma pauperis, shall be afforded the opportunity to request the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1).